IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04-CV-00050

| | |
|---|---|
| GRACE WALDON, and ENVIRONMENTAL WATER SOLUTIONS, INC., a North Carolina corporation, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) **ORDER** |
| DANNY BURRIS, CAROL BURRIS, WATER RESOURCES CORP., DYNPAR, LLC, ENVIRONMENTAL WATER SOLUTIONS, INC., an Oklahoma corporation, COMPUTER SCIENCES CORPORATION, and DYNCORP, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon Defendants DynPar, DynCorp and Computer Sciences Corporation's ("DynPar") Motion for Summary Judgment (Document 73) and Defendants Danny Burris, Carol Burris and Water Resources Corp.'s ("Mr. Burris") Motion for Summary Judgment (Document 96.) For the reasons set forth below, both motions are DENIED.

**I. BACKGROUND**

This case arises from a North Carolina state court action. In the state court action, Grace Waldon and Environmental Water Solutions, Inc. ("Ms. Waldon") brought suit against Danny Burris ("Mr. Burris") as an officer of Environmental Water Solutions Inc.-North Carolina ("EWSI-NC"). The case centered on a subcontract between DynPar and EWSI for the operation of the industrial wastewater treatment plant ("IWTP") at Tinker Air Force Base in Oklahoma. Ms. Waldon claimed that Mr. Burris breached his fiduciary duties by secretly transferring EWSI-

NC's subcontract to an Oklahoma corporation Mr. Burris created with the same name ("EWSI-OK"). On September 5, 2003, the jury in the Union County Superior Court found Mr. Burris guilty of diverting the contract from EWSI-NC to EWSI-OK. The North Carolina judgment placed the Tinker contract profits under a constructive trust for EWSI-NC. (Document 84-33 at 3.)

Ms. Waldon filed the current claim in Union County Superior Court on January 8, 2004. The case was removed to this Court on February 6, 2004. In this action, Ms. Waldon claims that DynPar conspired with Mr. Burris in diverting the contract from EWSI-NC to EWSI-OK. Further, Ms. Waldon brings new claims against DynPar and Mr. Burris for conspiring to avoid the North Carolina judgment by transferring the EWSI-OK to a new company, Water Resources Corp. ("WRC"). The current motions for summary judgment were filed by DynPar on October 31, 2006 and by Mr. Burris on January 9, 2007. In his motion, Mr. Burris adopted the arguments presented by DynPar and therefore, this Court will address both motions simultaneously.

## II. DISCUSSION

To prevail on a Motion for Summary Judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may consider all pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Id. The party seeking summary judgment bears the initial burden of demonstrating to the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon such a showing, the non-moving party may not rest on the allegations of its pleadings, but rather must demonstrate to the Court "specific facts showing that there is a genuine issue for trial." Id. at 324. Summary

judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970).

Ms. Waldon asserts three claims against DynPar and Mr. Burris: 1) conspiracy to commit fraud; 2) fraudulent transfer under N.C.G.S. § 39-23.7; and 3) unfair trade practices under N.C.G.S. § 75-1.1. Ms. Waldon brought the present action in North Carolina, and thus North Carolina choice of law rules control. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).

**A. Choice of Law**

This Court finds that North Carolina law controls the conspiracy to commit fraud claim. The North Carolina Court of Appeals has held that matters affecting the substantive rights of the parties are determined by lex loci, the law of the situs of the claim. Stetser v. TAP Pharmaceutical Products, Inc., 598 S.E.2d 570, 580 (N.C. Ct. App. 2004). For actions sounding in tort (e.g. common law fraud and civil conspiracy), the state where the injury occurred is the situs of the claim.[1]  Id.

---

[1] Alternatively, it is not clear that Oklahoma law would prevail even if this Court were to adopt the most significant relationship test. Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co., which DynPar cites in support of the most significant relationship test, advocated a "flexible approach" to allow courts to evaluate in each case on a variety of factors to determine the "totality of contacts of the states concerned with the parties and the subject matter." 319 F.2d 469, 475 (4th Cir. 1963). Those factors, as outlined in Restatement (Second) Conflict of Laws § 148 include: where the plaintiff acted in reliance upon the defendant's representations, where the plaintiff received the representations, where defendant made the representations, the domicil, residence, nationality, place of incorporation and place of business of the parties and where the tangible subject of the transaction was located. While these factors are split between North Carolina and Oklahoma, this Court is persuaded that North Carolina's

This Court finds that North Carolina law controls the fraudulent transfer claim as well. For such statutory claims, North Carolina has adopted two tests, applying either the law of the state where the injuries were sustained or the law of the state with the most significant relationship to the transaction.[2] The most significant relationship test is applied where "the place of injury is so open to debate" or the place of injury would require "that the laws of a state with only a minor connection to a transaction should govern." New England Leather Co. v. Feuer Leather Corp., 942 F.2d 253, 255-6 (4th Cir. 1991) (suggesting the most significant relationship test appropriate for a claim involving a "triangular commercial relationship involving seller, supplier, and customers").

Here, the alleged injury has clearly been suffered by a North Carolina resident and corporation. Furthermore, the contacts between North Carolina and the events in question are not minor. Although most of the events in dispute occurred in Oklahoma, DynPar's argument that the only connection to North Carolina is that Ms. Waldon and EWSI-NC are North Carolina residents (Document 74 at 21-23) overlooks the fact that Ms. Waldon's claims stem from DynPar's alleged efforts to avoid the judgment of a North Carolina court. This state's connection to the alleged avoidance of its state court judgment is not minor.

Finally, for the reasons set forth above, this Court finds that North Carolina law controls

---

interest in seeing its state court judgments honored weighs in favor of applying North Carolina law to Ms. Waldon's claim.

[2] As DynPar recognizes, "there is no basis to conclude [the North Carolina Uniform Fraudulent Transfer Act] would be subjected to any different interpretation than . . . the Oklahoma statute." (Document 74 at 34.) Therefore, an analysis under the North Carolina or Oklahoma fraudulent transfer statute yields the same result for Ms. Waldon's second claim.

the unfair trade practices claims.³ Again, the site of the injury is clear and North Carolina's connection to unfair practices occurring in Oklahoma but affecting North Carolina parties is not minor. Therefore, North Carolina law will be applied to each of Ms. Waldon's causes of action.

**B. Conspiracy to Commit Fraud**

Under North Carolina law, a conspiracy to defraud claim must be based on an underlying fraud. See Jay Group, Ltd. v. Glasgow, 534 S.E.2d 233, 236 (N.C. Ct. App. 2000).⁴ Under North Carolina law, fraud is defined as a: "(1) [f]alse representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured Party." Rowen County Bd. of Educ. v. U.S. Gypsum Co., 418 S.E.2d 648, 658 (N.C. Sup. Ct. 1992) (citation omitted).⁵ North Carolina defines civil conspiracy as "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." Muse v. Morrison, 66 S.E. 2d 783, 784 (1951). "To

---

³ North Carolina and Oklahoma law differ for unfair trade claims. While North Carolina allows for the recovery of treble damages, Oklahoma does not. Stetser, 598 S.E.2d at 583-585, n.14. The Fourth Circuit highlighted this difference in New England Leather, noting that it is "particularly important" to "examin[e] a state's relationship to a transaction before applying its laws . . . when the claim at issue is one for a deceptive trade practice, a cause of action whose parameters vary among the states and which carries with it a treble damages penalty." 942 F.2d at 256. However, as noted above, this Court is not persuaded that North Carolina does not possess the most significant relationship to the events in question.

⁴ Oklahoma does not recognize a free-standing conspiracy claim either. See Brock v. Thompson, 948 P.2d 279, 294 (Okla. Sup. Ct. 1997) ("[t]here can be no civil conspiracy where the act complained of and the means employed are lawful"). Therefore, whether applying North Carolina or Oklahoma law to the conspiracy claim, an underlying fraud must be shown.

⁵ Under Oklahoma law, a fraud is: "(1) a false material misrepresentation, (2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, (3) with the intention that it be acted upon, and (4) which is relied on by the other party to his/her own detriment." Rogers v. Meiser, 68 P.3d 967, 977 (Okla. Sup. Ct. 2003).

create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to a common scheme and in furtherance of the common object." Id. at 785. Once established, co-conspirators are jointly and severally liable. Id.

Ms. Waldon alleges that the diversion from EWSI-NC to EWSI-OK and the transfer from EWSI-OK to WRC were both fraudulent. As evidence of agreement, Ms. Waldon cites letters from Vernon Vann, DynPar's contract administrator. Mr. Vann, who signed the initial contract between DynPar and EWSI-NC, acknowledges that he marked as "revised" Mr. Burris' revised representations and certifications submitted after the signing of the initial contract. Included in these revisions were the changed tax I.D. from EWSI-NC to EWSI-OK. (Document 84-8 at 23.) Further, Ms. Waldon contends that DynPar conspired with Mr. Burris to destroy the old documents including the EWSI-NC tax I.D. These claims raise a material fact as to a possible conspiracy between DynPar and Mr. Burris relating to the diversion from EWSI-NC to EWSI-OK.

Ms. Waldon further contends that a conspiracy existed subsequent to the September 5, 2003 judgment against Mr. Burris. On September 6 and 11, Mr. Burris met with DynPar representatives. In these meetings, Mr. Burris provided DynPar executives with a copy of the North Carolina verdict and informed DynPar that the EWSI-OK contract would expire on September 30, 2003. (Document 84-4 at 11-13.) On September 24, 2003, Mr. Burris presented DynPar with a proposal from WRC. The new contract between DynPar and WRC became effective October 1, 2003. (Document 74 at 10.) These claims raise a material fact as to a possible conspiracy between DynPar and Mr. Burris relating to the WRC re-contracting.

Because there are still issues of material fact relating to the alleged fraud, as well an

agreement between DynPar and Mr. Burris, the conspiracy to commit fraud claim cannot be resolved as a matter of law. Thus, this claim is not suitable for a summary judgment motion.

### C. Fraudulent Transfer

Under North Carolina law, a transfer is fraudulent as to creditors "if the debtor made the transfer or incurred the obligation . . . with intent to hinder, delay, or defraud any creditor of the debtor." To decipher intent, North Carolina law looks to numerous factors, including if the debtor retained control of the property after the transfer, if the transfer was concealed, if the debtor had been sued or threatened with suit either before the transfer, if the debtor was insolvent or became insolvent following the transfer and if the transfer occurred "shortly before or shortly after a substantial debt was incurred." N.C.G.S.A. § 39-23.4.

Here, the North Carolina judgment named Ms. Waldon as a creditor of Mr. Burris and EWSI-OK. Ms. Waldon claims that Mr. Burris and DynPar conspired to "transfer the primary asset" of EWSI to WRC "with the intent to hinder, delay, and defraud" Ms. Waldon's attempt to collect her judgment. Waldon Complaint II at ¶ 50-1. Viewed in the light most favorable to Ms. Waldon, as the non-movant, the re-contracting from EWSI-OK to WRC appears suspect.

DynPar contends that there can be no fraudulent conveyance because North Carolina courts do not recognize the value of at-will contracts, such as the one between DynPar and EWSI. DynPar, however, fails to cite any case which demonstrates North Carolina's "limited and dubious value of at-will relationships." (Document 74 at 34.) Bloch v. The Paul Revere Life Ins. Co., prevented an employee from recovering fifteen years expectation damages, but did not set such a sweeping limitation of at-will contracts. 547 S.E.2d 51 (N.C. Ct. App. 2001). Further, since North Carolina has adopted a rebuttable presumption of at-will employment (Ruffin v.

7

TRW, Inc., 952 F.2d 396 (4th Cir. 1991) (per curiam)), a ruling that at-will contracts are of dubious value would bode ominously for many North Carolina workers. This Court is not persuaded to do so.

Similarly, DynPar argues that the expiration of a contract on its own terms does not equal a transfer. However, the cases cited by DynPar do not involve the immediate rewriting of such contracts under a different name, such as was the case here. As DynPar admits, the EWSI-OK and WRC contracts were largely identical, with WRC employing "all of the former employees of EWSI-OK." (Document 74 at 10.) DynPar further states that the formal subcontract between DynPar and WRC included "virtually identical terms as the prior Subcontract with EWSI-OK." Id. The only apparent differences between the two contracts are the name and the 4% lower bid. The specific circumstances surrounding the re-contracting from EWSI-OK to WRC are unclear, and therefore, this Court cannot rule as a matter of law that it did not amount to a transfer.

There remain material facts at issue concerning whether there was a transfer of assets, and whether that transfer was fraudulent. Thus, the claim is improper for a summary judgment motion.

**D. Unfair and Deceptive Trade Practices**

In order to prove unfair and deceptive practices under N.C.G.S. § 75-1.1, the party must show: "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or to his business." McInerney v. Pinehurst Area Realty, Inc., 590 S.E.2d 313, 316 (N.C. Ct. App. 2004). Typically, "once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or

deceptive practices." Gray v. North Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. Sup. Ct. 2000). Although the unfair trade practices statute is traditionally associated with consumer protection, "its protections extend to businesses in appropriate situations." Dalton v. Camp, 548 S.E.2d 704, 710-11 (N.C. Sup. Ct. 2001).

Ms. Waldon alleges a litany of unfair practices, and as with the previous claims, the facts are disputed and unclear. It is, however, the providence of the jury to evaluate these facts. Only then can this Court rule whether those facts, as determined by the jury, constitute unfair practices. Importantly, the North Carolina Supreme Court has found proof of fraud to "necessarily" be proof of an unfair and deceptive act. Winston Realty Co. v. G.H.G. Inc., 331 S.E.2d 677, 681 (1985). In the present case, it is a question of material fact whether DynPar and Mr. Burris committed fraud, and therefore, whether DynPar committed unfair or deceptive trade practices. Again, the presence of such factual disputes render this claim inappropriate for summary judgment resolution.

For the reasons set forth above, Defendants Computer Sciences and Dynpar Motion for Summary Judgment is DENIED.

In addition, Defendants Danny L. Burris, Carol Burris etc Motion for Summary Judgment is DENIED.

Parties are directed to file a joint status report to this Court within the next 20 days outlining their availability for trial in January or February 2008 as well as estimates for the length

9

of the trial.

    IT IS SO ORDERED.

Signed: August 7, 2007

Graham C. Mullen
United States District Judge